IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LONE STAR FUND IV (U.S.), L.P., LONE STAR FUND IV (BERMUDA), L.P. and LSF-KEB HOLDINGS SCA, | § § § § | |
| Plaintiff, | § § § | CIVIL ACTION NO. 3:09-CV-01614-B |
| v. | § § | |
| STEVEN H. LEE | § § | **HEARING REQUESTED** |
| Defendant. | § § § § § | |

**STEVEN H. LEE'S MOTION TO DISMISS PLAINTIFFS' ORIGINAL COMPLAINT FOR LACK OF PERSONAL JURISDICTION, FORUM NON CONVENIENS, AND FAILURE TO PLEAD FRAUD WITH PARTICULARITY AND BRIEF IN SUPPORT**

## TABLE OF CONTENTS

**Page**

I.  Introduction ................................................................................. 1

II. Facts ........................................................................................... 4

III. Argument & Authorities ........................................................... 10

    A.  The LS Plaintiffs Cannot Meet Their Burden To Establish Personal Jurisdiction Over Mr. Lee ........................................................ 10

        1.  The LS Plaintiffs Cannot Establish That Mr. Lee Has "Minimum Contacts" With Texas ................................... 11

            (a)  The LS Plaintiffs Cannot Establish General Jurisdiction Over Mr. Lee ...................................... 11

            (b)  The LS Plaintiffs Cannot Establish Specific Jurisdiction Over Mr. Lee ...................................... 13

                (i)  The LS Plaintiffs Cannot Establish Specific Jurisdiction Over Their Misappropriation Claims ............................................................ 16

                (ii)  The LS Plaintiffs Cannot Establish Specific Jurisdiction Over Their Transaction Adjustment Claims ................................................. 18

                (iii)  The LS Plaintiffs Cannot Establish Specific Jurisdiction Over Their Omission Claims ................ 19

        2.  This Court's Exercise Of Personal Jurisdiction Over Mr. Lee Would Also Offend Traditional Notions Of Fair Play And Substantial Justice .................................................. 20

    B.  Alternative Motion To Dismiss For *Forum Non Conveniens*, International Comity, Or Under The Court's Inherent Power To Control Its Docket ...................................................................... 25

        1.  The *Forum Non Conveniens* Factors Preponderate In Favor Of Dismissal .............................................................. 28

            (a)  Bermuda Is Both An Available And Adequate Alternative Forum .............................................. 28

            (b)  The Private And Public Interest Factors Weigh Heavily In Favor Of Dismissal ........................... 29

    C.  In All Events, The LS Plaintiffs' Complaint Must Be Dismissed Because It Fails To Plead Fraud With Particularity ................... 32

IV. Conclusion ................................................................................ 35

## <u>TABLE OF AUTHORITIES</u>

**Page**

CASES

*Am. Airlines, Inc. v. Rogerson ATS*,
  952 F. Supp. 377 (N.D. Tex. 1996) ......................................................................21

*Ambraco Inc. v. Bossclip B V*,
  570 F.3d 233 (5th Cir. 2009) ...............................................................................21

*Anderson-Tully Lumber Co. v. Int'l Forest Prods., S.R.L.*,
  306 F. App'x 858 (5th Cir. 2009) .........................................................................26

*Breckenridge Enters., Inc. v. Avio Alternatives, LLC*,
  3:08-CV-1782, 2009 U.S. Dist. LEXIS 44518 (N.D. Tex. May 27, 2009) ............14

*Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972) ................................................................................................21

*Burchfield v. Stein*,
  3:01-CV-2529, 2002 U.S. Dist. LEXIS 3233 (N.D. Tex. Feb. 27, 2002) ........14, 15

*Camejo v. Ocean Drilling & Exploration*,
  838 F.2d 1374 (5th Cir. 1988) .............................................................................25

*Caspian Invest., Ltd. v. Vicom Holdings, Ltd.*,
  770 F. Supp. 880 (S.D.N.Y. 1991) .......................................................................27

*Dragon Capital Partners L.P. v. Merrill Lynch Capital Servs. Inc.*,
  949 F. Supp. 1123 (S.D.N.Y. 1997)...........................................................23, 24, 26

*Freudensprung v. Offshore Tech. Servs.*,
  379 F.3d 327 (5th Cir. 2004) ...............................................................................13

*Gonzalez v. Naviera Neptuno A.A.*,
  832 F.2d 876 (5th Cir. 1987) ...............................................................................31

*Guidry v. U.S. Tobacco Co.*,
  188 F.3d 619 (5th Cir. 1999) ...............................................................................23

*Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.*,
  85 F.3d 201 (5th Cir. 1996) .................................................................................15

*Ham v. La Cienega Music Co.*,
  4 F.3d 413 (5th Cir. 1993) ...................................................................................10

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
  466 U.S. 408 (1984)............................................................................................11

<u>TABLE OF AUTHORITIES</u>

Page

*Hellenic Inv. Fund, Inc. v. Det Norske Veritas,*
   464 F.3d 514 (5th Cir. 2006) ..................................................................................32

*Hildenbrandt v. Indianapolis Life Ins. Co.,*
   3:08-CV-1815, 2009 U.S. Dist. LEXIS 12048 (N.D. Tex. February 17, 2009) .....................13

*In re Ford Motor Co.,*
   09-50109, 2009 U.S. App. LEXIS 19071 (5th Cir. Aug. 21, 2009) .......................................29

*Johnston v. Multidata Sys. Int'l Corp.,*
   523 F.3d 602 (5th Cir. 2008) ........................................................................... *passim*

*Kempe v. Ocean Drilling & Exploration Co.,*
   876 F.2d 1138 (5th Cir. 1989) ..........................................................................23, 28

*Koster v. (Am.) Lumbermens Mut. Casualty Co.,*
   330 U.S. 518 (1947)..................................................................................................26

*Luker v. Luker,*
   776 S.W.2d 624 (Tex. App.—Texarkana 1989, writ denied)................................12

*McLennan v. Am. Eurocopter Corp.,*
   245 F.3d 403 (5th Cir. 2001) ..................................................................................29

*MLC (Berm.) Ltd. v. Credit Suisse First Boston Corp.,*
   46 F. Supp. 2d 249 (S.D.N.Y. 1999)........................................................................26

*Pan Eastern Exploration Co. v. Hufo Oils,*
   798 F.2d 837 (5th Cir. 1986) ..................................................................................26

*Panda Brandywine Corp. v. Potomac Elec. Power Co.,*
   253 F.3d 865 (5th Cir. 2001) ......................................................................10, 14, 16

*Patel v. Pac. Life Ins. Co.,*
   3:08-CV-249, 2009 U.S. Dist. LEXIS 44105 (N.D. Tex. May 22, 2009) ..................... *passim*

*Piper Aircraft Co. v. Reyno,*
   454 U.S. 235 (1981)..............................................................................................25, 28

*Revell v. Lidov,*
   317 F.3d 467 (5th Cir. 2002) ..................................................................................10

*Ruhrgas AG v. Marathon Oil Co.,*
   526 U.S. 574 (1999)....................................................................................................3

*Seiferth v. Helicopteros Atuneros, Inc.,*
   472 F.3d 266 (5th Cir. 2006) ..................................................................................15

## <u>TABLE OF AUTHORITIES</u>

Page

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
    549 U.S. 422 (2007) .................................................................................................3

*Southern Bleacher Co., Inc. v. Husco, Inc.*,
    7:01-CV-009, 2001 U.S. Dist. LEXIS 5911 (N.D. Tex. May 7, 2001) ...................14

*Stelax Indus., Ltd. v. Alder Trading Corp.*,
    3:03-CV-923, 2004 U.S. Dist. LEXIS 29026 (N.D. Tex. March 25, 2004) ...........15

*Stuart v. Spademan*,
    772 F.2d 1185 (5th Cir. 1985) ...............................................................................10

*Submersible Sys., Inc. v. Perforadora Cent., S.A.*,
    249 F.3d 413 (5th Cir. 2001) .................................................................................11

*U.S.O. Corp. v. Mizuho Holding Co.*,
    547 F.3d 749 (7th Cir. 2008) .................................................................................30

*Vosko v. Chase Manhattan Bank*,
    909 S.W.2d 95 (Tex. App.—Houston [14th Dist.] 1995, writ denied) ...................12

*Wilson v. Belin*,
    20 F.3d 644 (5th Cir. 1994) ...................................................................................11

## RULES

Fed. R. Civ. P. 9(b) ......................................................................................... *passim*

Local Rule 7.1(i) ...................................................................................................4

Local Rule 7.2(e) ...................................................................................................4

## OTHER AUTHORITIES

Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and*
    *Procedure* § 1069.5 (3d ed. 2007) .......................................................................12

Defendant Steven H. Lee respectfully requests an oral hearing on this motion. Parties that control the plaintiffs here are currently prosecuting an overlapping lawsuit against Mr. Lee in Bermuda. An oral hearing will allow this Court to fully explore the nature of those proceedings and their impact on the issues of personal jurisdiction and *forum non conveniens* in this Texas lawsuit.

## I.   INTRODUCTION

This case involves a $24 billion private-equity fund, Lone Star, that is pursuing a vendetta against Steven H. Lee—the executive who headed Lone Star's investment strategy in South Korea from 1999 to 2005. While Mr. Lee was living and working in Korea, he misappropriated funds totaling $12 million by falsifying certain invoices. But those misappropriations did not begin until sometime in January 1999—after Mr. Lee had changed his residence from Texas to Korea. When Lone Star questioned Mr. Lee's conduct in 2005, Mr. Lee immediately admitted his wrongdoing and made complete restitution by the end of that year.

But not satisfied with Mr. Lee's full restitution, Lone Star sought to extract further sums from Mr. Lee by filing a lawsuit in Bermuda in 2006, which is still ongoing. The goal of that lawsuit is unmistakable: Mr. Lee's complete financial ruin through an attempted forfeiture of his limited partnership share in Lone Star's Korean profits—a share under which he could be entitled to hundreds of millions of dollars. Lone Star filed that lawsuit in Bermuda because it is the *agreed upon* mandatory forum and provides the applicable law under Lone Star's partnership agreements with Mr. Lee.

Apparently not satisfied even with the Bermuda litigation, related Lone Star entities have now filed this duplicative lawsuit in Dallas, Texas, alleging the same three fraud claims that Lone Star is pursuing against Mr. Lee in the Bermuda case.  Like the Bermuda case, this Texas case also seeks to extract from Mr. Lee speculative and far reaching damages that are in no way proximately caused by his wrongdoing—the misappropriations to which Mr. Lee admitted and for which he made full restitution years ago.  Lone Star suggests that Mr. Lee's misappropriations somehow spawned two Korean government investigations and a wave of public sentiment against U.S. private-equity funds that forestalled Lone Star's sale of its interest in a Korean bank, KEB, resulting in a loss of billions of dollars—which Lone Star now wants Mr. Lee to pay for.  Those allegations are demonstrably false, but, in any event, this lawsuit should be seen for what it is: an attempt by a $24 billion private-equity fund to bludgeon its former employee by forcing him to simultaneously litigate the same dispute in two far flung jurisdictions.

This Court should dismiss Lone Star's Complaint against Mr. Lee at this threshold for three independent reasons:

      1.    This Court lacks personal jurisdiction over Mr. Lee, because the Complaint does not allege that any of his wrongful conduct took place in Texas, and Mr. Lee has not been a Texas resident for more than ten years.

      2.    This Court should exercise its discretion under the law of *forum non conveniens*, or its inherent powers in the interests of international comity, to relinquish its

jurisdiction in favor of Bermuda's because this Texas lawsuit is duplicative of the lawsuit that Lone Star is already prosecuting against Mr. Lee in Bermuda.

        3.      Lone Star fails to plead fraud with the particularity required by Rule 9(b).

Plaintiffs have recently filed a motion to remand, to which Mr. Lee will submit his opposition in due course. This Court, however, can and should dismiss this duplicative and vindictive lawsuit for lack of personal jurisdiction now, rather than allowing Lone Star's war of attrition to proceed any further in Texas—a second, inappropriate and duplicative forum for the claims asserted. The United States Supreme Court recently confirmed that a court may dismiss for lack of personal jurisdiction without first determining subject-matter jurisdiction. *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431-32 (2007) (recognizing that under *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999), a district court "may dismiss for lack of personal jurisdiction without first establishing subject-matter jurisdiction," and extending principle to hold that district courts may bypass questions of subject matter and personal jurisdiction, and dismiss under *forum non conveniens* principles "when considerations of convenience, fairness, and judicial economy so warrant."). Here, Mr. Lee urges the

Court to consider the clear-cut issues of personal jurisdiction raised in this motion before ruling on plaintiffs' motion to remand.[1]

## II.    FACTS

### *Mr. Lee's Residence In Korea And Then New Jersey At the Time Of The Events In Suit*

After obtaining his MBA from Harvard, Steven Lee moved to Dallas, Texas in 1995 to join a predecessor fund to Lone Star's first private-equity fund.[2] (Ex. 1 ¶ 2, App. 2).  Mr. Lee resided and worked in Dallas from June of 1995 until early January 1999. (Ex. 1 ¶ 3, App. 3).  In January 1999, Mr. Lee moved to South Korea, where he became the senior executive in charge of identifying Korean investment opportunities for Lone Star's newly formed Korean affiliate, Lone Star Advisors Korea LLC (LSAK).  (Ex. 1 ¶ 4, App. 3).  Mr. Lee resided and worked in South Korea from January 1999 until July 2004, when he and his family moved to New Jersey, where they continue to reside.  (Ex. 1 ¶ 4, App. 3).

### *The LS Plaintiffs And Lone Star*

Lone Star is one of the world's largest private equity firms, with approximately $24 billion in assets under management.[3]  It created and manages at least six sequentially

---

[1] Mr. Lee specifically asserts his personal-jurisdiction argument first, and asserts his other arguments subject thereto; he expressly reserves his right to raise lack of personal jurisdiction through a special appearance if this Court were to remand this case to Texas state court.

[2] Accompanying this Brief is an Appendix which includes Mr. Lee's declaration, a copy of Lone Star's Bermuda Statement of Claim, and various documents regarding Lone Star and its numerous affiliates.  The Appendix is consecutively paginated as required by Local Rule 7.1(i).  Citations to the Appendix are to the exhibit letter or number, and then to the page number of the Appendix, as required by Local Rule 7.2(e).

[3] The $24 billion figure is taken from Lone Star's website. *http://www.lonestarfunds.com/En/introduction.htm* (last visited September 29, 2009).

numbered investment funds, each of which is controlled by a similarly structured conglomeration of limited partnerships and Bermuda exempt companies.[4]  (Ex. 1 at ¶ 12, App. 5).  All of these Lone Star funds and entities are controlled by Lone Star founder and chairman, John Grayken.  (Ex. 1 ¶ 12, App. 5).  Like many of Lone Star's partnerships and companies, including the majority of the Lone Star entities that have filed suits against Mr. Lee, Mr. Grayken is a foreign national; Mr. Grayken renounced his United States citizenship in 1999 and is now a citizen of Ireland.  (Ex. 2, App. 259; Ex. 3, App. 276).

Defendant Steven Lee is the former senior executive in Korea of LSAK, a Korean entity that is not a plaintiff here.  (Plaintiffs' Original Complaint (Compl.); Ex. 1 ¶ 4, App. 3; Ex. 1 ¶ 9, App. 4).  Instead, the plaintiffs in this case are Lone Star Fund IV (U.S.), L.P. (a Delaware partnership), Lone Star Fund IV (Bermuda), L.P. (a Bermuda partnership), and LSF-KEB Holdings, SCA (a private limited liability company created under the laws of Belgium for the primary purpose of holding Lone Star's largest Korean asset, Korea Exchange Bank or "KEB.")  (Compl. ¶¶ 2-4; Ex. 1 ¶ 15, App. 6).  In this motion, these entities will be referred to collectively as the LS Plaintiffs.  Mr. Lee is not and has never been a general or limited partner, nor an executive or director, of any of the LS Plaintiffs.  (Ex. 1, ¶ 17, App. 6).

---

[4] *See* First Amended and Restated Limited Partnership Agreement of Lone Star Partners III, L.P. (L.S. Partners III Agreement) (Ex. A, App. 10-82); First Amended and Restated Limited Partnership Agreement of Lone Star Partners IV, L.P. (L.S. Partners IV Agreement) (Ex. B, App. 83-156).

### *Mr. Lee's Admitted Misappropriations And His Restitution In 2005*

In 2005, in the midst of a tax audit conducted by the Korean National Tax Service, Lone Star undertook an investigation of its Korean operations and discovered irregularities with respect to invoices that Mr. Lee had generated.  (Ex. 1 ¶ 10, App. 4).  Mr. Lee promptly admitted that he had misappropriated some $12 million and by the end of 2005 made restitution of that entire amount.  (Ex. 1 ¶ 11, App. 4-5).

### *Lone Star's 2006 Bermuda Case Against Mr. Lee Is Ongoing*

Not satisfied with Mr. Lee's repentance and full restitution, several Lone Star entities[5] commenced litigation against Mr. Lee in Bermuda in March of 2006.  In the Bermuda case, Lone Star seeks wildly inflated damages and improper remedies that have no proximate connection to Mr. Lee's admitted misconduct, including forfeiture of Mr. Lee's Lone Star limited partnership interests potentially worth hundreds of millions of dollars.  (Ex. 1 ¶ 23, App. 8; Ex. 1 ¶ 14, App. 6).  Lone Star sued Mr. Lee in Bermuda because its partnership agreements with Mr. Lee mandate Bermuda as the forum for disputes, and Bermuda's as the governing law.[6]

---

[5] Lone Star's Bermuda corporate plaintiffs have sued on behalf of Bermuda limited partnerships, one of which is the Bermuda general partner that controls two of the LS Plaintiffs in this Texas suit.  (Ex. 1 ¶ 18, App. 6-7).

[6] The choice of law and forum provision in the partnership agreements for Lone Star Partners III, L.P. and Lone Star Partners IV, L.P. states: "**GOVERNING LAW AND VENUE: THIS AGREEMENT IS MADE IN BERMUDA AND THE RIGHTS AND OBLIGATIONS OF THE PARTNERS HEREUNDER SHALL BE INTERPRETED, CONSTRUED, AND ENFORCED IN ACCORDANCE WITH THE LAWS OF BERMUDA.  ALL MATTERS LITIGATED BY, AMONG, OR BETWEEN ANY OF THE PARTNERS THAT INVOLVE THIS AGREEMENT, THE RELATIONSHIP OF THE PARTNERS, OR ANY RELATED DOCUMENTS OR MATTERS HEREUNDER SHALL BE BROUGHT ONLY IN BERMUDA.**"  (Ex. A § 7.07 (Lone Star Partners III, L.P. Agreement), App. 36; Ex. B § 7.07 (Lone Star Partners IV, L.P. Agreement), App. 107).

After numerous delays by Lone Star, it filed a Statement of Claim against Mr. Lee in Bermuda on May 6, 2008.  (Ex. 1 ¶ 18, App. 6-7; Ex. 1 ¶ 20, App. 7).  That Statement of Claim alleges the same twenty instances of misappropriation and the same omission claims as are raised in this Texas lawsuit.  (Ex. 1 ¶ 20, App. 7, Ex. D, App. 163, Ex. E, App. 173).  The Bermuda Lone Star plaintiffs recently sought to amend their Statement of Claim to add transaction adjustment allegations as well, an amendment that Mr. Lee has opposed.  (Ex. 1 ¶ 22, App. 8).  The Bermuda court is thus already knowledgeable concerning the controversy between Lone Star and Mr. Lee, and it is of course well versed in the applicable Bermuda law.  In the Bermuda case, Mr. Lee has admitted his $12 million misappropriations and has complied with his discovery obligation to produce his list of relevant documents.[7]  (Ex. 1 ¶ 11, App. 4-5; Ex. 1 ¶ 21, App. 8).  Conversely, the Lone Star entities in the Bermuda lawsuit have disregarded their obligation to provide their list of documents, which is long overdue.  (Ex. 1 ¶ 21, App. 8).  Worse, in the Bermuda litigation, Lone Star has engaged in unlawful self-help by confiscating millions of dollars of limited partnership distributions owed to Mr. Lee, without court authorization and even as it litigated the issue.  (Ex. 1 ¶ 23, App. 8).  Indeed, while Lone Star argued that Mr. Lee had forfeited his partnership interest by failing to disclose his purportedly wrongful conduct, Lone Star nonetheless used some of Mr. Lee's partnership distributions to pay an $18 million personal debt that he owed to Lone Star senior partner Ellis Short.  (Ex. F ¶ 11, App. 194).

---

[7] Bermuda law requires civil litigants to make discovery by exchanging lists of documents, a procedure akin to the requirement of initial disclosures under federal law but much more expansive in scope.

### *Lone Star's Newly-Filed Texas Case Against Mr. Lee*

Three-and-a-half years after Lone Star sued Mr. Lee in Bermuda, other Lone Star entities filed this Texas litigation against him in July of 2009. Although the Texas Complaint against Mr. Lee is conclusory, it purports to assert three fraud claims. (Compl. ¶ 13, 15, 32). First, it alleges twenty instances in which Mr. Lee misappropriated $12 million by falsifying invoices (Misappropriation Claims). The Complaint contains no details concerning the mechanics of these transactions; even more to the point, the LS Plaintiffs do not allege that any of these misappropriations arose out of Mr. Lee's contacts with Texas. Indeed, nineteen of the twenty misappropriations allegedly occurred—according to the dates in the LS Plaintiffs' own Complaint—after January 1999, when Mr. Lee resided in Korea. (Compl. ¶ 13). These dates presumptively demonstrate that Texas lacks general jurisdiction over Mr. Lee with respect to the Misappropriation Claims. And while the Complaint alleges that the twentieth misappropriation occurred on December 31, 1998, Mr. Lee actually prepared the invoice related to the misappropriation in Korea in January 1999, and then backdated it. (Ex. 1 ¶ 7, App. 4).

Second, the LS Plaintiffs allege that Mr. Lee adjusted the reported returns of several "Lone Star portfolios," "increasing the returns on sub-performing investments at the expense of those that performed well (Transaction Adjustment Claims)." (Compl. ¶ 15). The LS Plaintiffs do not allege that these transactions arise out of Mr. Lee's contacts with Texas.

Third, the LS Plaintiffs allege that Mr. Lee failed to disclose material facts to the LS Plaintiffs.  (Omission Claims).  (Compl. ¶ 7).  The LS plaintiffs do not specify the purported facts that Mr. Lee should have disclosed, nor do they allege that Mr. Lee omitted these facts from any communication with Texas.  These three categories of claims are identical to those asserted by Lone Star in the Bermuda action, as the chart below demonstrates:

|  | MISAPPROPRIATION CLAIMS | OMISSION CLAIMS | TRANSACTION ADJUSTMENT CLAIMS |
|---|---|---|---|
| BERMUDA CASE | Alleges that Mr. Lee misappropriated specific amounts on specific dates from 20 specific entities, none of which are the LS Plaintiffs in the Texas case. (Ex. D ¶ 16, App. 169-170). | Alleges that Mr. Lee breached his fiduciary duties by failing to disclose certain transactions to Lone Star.  (Ex. D ¶¶ 19-20, App. 170-171). | Alleges that Mr. Lee "directed, arranged and/or procured improper transaction adjustments within and between . . . Funds." (Ex. E ¶ 18A-18B, App. 180-181) (proposed amendment) |
| TEXAS CASE | Alleges that Mr. Lee misappropriated the same amounts on the same dates from the same 20 entities, none of which are the LS Plaintiffs in the Texas case. (Compl. ¶ 13). | Alleges that Mr. Lee failed to disclose material facts to Lone Star that he had a fiduciary duty to disclose.  (Compl. ¶ 32). | Alleges that Mr. Lee "authorized and directed a series of fraudulent transactions involving a number of different" Funds. (Compl. ¶ 15). |

## III.   ARGUMENT & AUTHORITIES

### A.   THE LS PLAINTIFFS CANNOT MEET THEIR BURDEN TO ESTABLISH PERSONAL JURISDICTION OVER MR. LEE

The LS Plaintiffs bear the burden of demonstrating facts sufficient to establish personal jurisdiction over Mr. Lee, a nonresident defendant.  *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993).  In order to carry that burden, the LS Plaintiffs must present a *prima facie* case that personal jurisdiction is proper.  *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).  The Court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.  *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).

Because Texas's long-arm statute extends as far as federal due process will permit, the sole question here is whether this Court's exercise of personal jurisdiction over Mr. Lee would comport with due process under the United States Constitution.  *See Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001).  Due process permits the exercise of personal jurisdiction over a nonresident defendant if the defendant has "minimum contacts" with Texas and the exercise of personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice."  *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).

A defendant's "minimum contacts" with the forum state can be established through contacts that give rise to general personal jurisdiction, or through contacts that

give rise to specific personal jurisdiction.  *Wilson*, 20 F.3d at 647.  The exercise of

general personal jurisdiction is proper when the nonresident defendant's contacts with the

forum state, even if unrelated to the cause of action, are continuous, systematic, and

substantial.  *Johnston*, 523 F.3d at 610.  In contrast, the exercise of specific personal

jurisdiction is proper only when the cause of action arises out of or is directly related to

the defendant's contacts with the forum state.  *Helicopteros Nacionales de Columbia,*

*S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).  As explained below, this Court lacks both

general and specific jurisdiction over Mr. Lee.  Further, this Court's exercise of personal

jurisdiction over Mr. Lee would also offend traditional notions of fair play and substantial

justice.

> 1.     **The LS Plaintiffs Cannot Establish That Mr. Lee Has "Minimum Contacts" With Texas**

>> (a)     **The LS Plaintiffs Cannot Establish General Jurisdiction Over Mr. Lee**

General jurisdiction exists only when the nonresident defendant's contacts with

the forum state are substantial, continuous, and systematic.  *Johnston*, 523 F.3d at 610.

This is an exacting standard, "requiring extensive contacts between a defendant and a

forum."  *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir.

2001) (citation omitted) (noting that the "continuous and systematic contacts test is a

difficult one to meet").  Generally, courts have not found general jurisdiction unless a

person resides in the state.

In *Johnston*, the Fifth Circuit discussed a series of prior cases, including the leading Supreme Court cases, to "illustrate just how difficult it is to establish general jurisdiction," 523 F.3d at 610 (collecting cases), and to show "the high standard set by the Supreme Court" for general jurisdiction. *Johnston*, 523 F.3d at 611. That high standard is heightened in cases like this, where the nonresident defendant is an individual rather than a corporation. *See* 4A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 1069.5 (3d ed. 2007).

The LS Plaintiffs' Complaint does not point to any contacts—let alone continuous and systematic contacts—that Mr. Lee had with Texas during the period relevant to their claims. Rather, the LS Plaintiffs' Complaint focuses exclusively on Mr. Lee's purported conduct after January 1999, by which time Mr. Lee was a resident of Korea, and later of New Jersey. (Ex. 1 ¶ 4, App. 3). This is itself sufficient to foreclose this Court's exercise of general jurisdiction over Mr. Lee.

And while it is true that Mr. Lee lived in Texas from May of 1995 until early January 1999, (Ex. 1 ¶ 3, App. 3)—before he relocated to Korea and before the events which are the subject of this suit—there is no such thing as lingering general personal jurisdiction in the case of individual defendants. *See Vosko v. Chase Manhattan Bank*, 909 S.W.2d 95, 99 (Tex. App.—Houston [14th Dist.] 1995, writ denied) (noting that an individual defendant's "former residence and contacts in Texas did not avail him of the benefits and protections of the State after that residency was relinquished"); *Luker v. Luker*, 776 S.W.2d 624, 625-26 (Tex. App.—Texarkana 1989, writ denied) (where cause

of action arose outside Texas after defendant ceased to be a resident, minimum contacts did not exist even though defendant continued to hold drivers license, travel to Texas three or four times a year and finance automobile in Texas).

As Mr. Lee's declaration shows, he changed his residency from Texas to Korea sometime in January 1999, and then in 2004 moved to New Jersey, where he continues to reside.  (Ex. 1 ¶ 4, App. 3).  As all of the conduct at issue in this case took place after January 1999, it is plain that this Court lacks general jurisdiction over Mr. Lee.

> **(b)    The LS Plaintiffs Cannot Establish Specific Jurisdiction Over Mr. Lee**

A Court's exercise of specific jurisdiction over a nonresident defendant is appropriate only when: (1) the nonresident defendant purposefully availed himself of the privileges of conducting business within the forum state by undertaking some activity in, or purposefully directing some act at, the forum state; and (2) the cause of action arises out of or is directly related to that activity or act.  *Hildenbrandt v. Indianapolis Life Ins. Co.*, 3:08-CV-1815, 2009 U.S. Dist. LEXIS 12048, at *10-*11 (N.D. Tex. February 17, 2009) (J. Boyle); *see also Freudensprung v. Offshore Tech. Servs.*, 379 F.3d 327, 343 (5th Cir. 2004) (same).  The mere foreseeability of causing harm in the forum state will not suffice to establish personal jurisdiction.  *See Patel v. Pac. Life Ins. Co.*, 3:08-CV-249, 2009 U.S. Dist. LEXIS 44105, at *80-*83 (N.D. Tex. May 22, 2009) (J. Boyle).  Indeed, in a fraud case, unless a nonresident defendant directly sends a misrepresentation into the forum state, evidence that the defendant "could reasonably anticipate being haled into court in Texas [ ] is simply lacking."  *Id*. at *83.

Three important pleading principles should guide this Court's analysis of whether the LS Plaintiffs' Complaint avers facts sufficient to establish specific jurisdiction over Mr. Lee.  First, this Court should disregard conclusory and speculative jurisdictional allegations in the Complaint.  *See Panda Brandywine*, 253 F.3d at 869.  According to the Fifth Circuit, "[t]he law does not require [district courts] to struthiously credit conclusory jurisdictional allegations or draw farfetched inferences."  *Id*. (citation and alterations omitted).  Rather, district courts need only consider well-pleaded facts in conducting their jurisdictional analysis.  *See id.*; *Southern Bleacher Co., Inc. v. Husco, Inc.*, 7:01-CV-009, 2001 U.S. Dist. LEXIS 5911, at *6 (N.D. Tex. May 7, 2001) (J. Buchmeyer).

Second, in fraud cases, plaintiffs face an additional pleading hurdle when they attempt to establish personal jurisdiction: "[F]or a fraud allegation to provide the basis for the assertion of personal jurisdiction, it must satisfy the particularity requirements of FED. R. CIV. P. 9(b), specifying the allegedly fraudulent statements, the speaker, when and where the statements were made, and why the statements were fraudulent."  *Breckenridge Enters., Inc. v. Avio Alternatives, LLC*, 3:08-CV-1782, 2009 U.S. Dist. LEXIS 44518, at *22 (N.D. Tex. May 27, 2009) (J. Lynn); *Burchfield v. Stein*, 3:01-CV-2529, 2002 U.S. Dist. LEXIS 3233, at *19 (N.D. Tex. Feb. 27, 2002) (J. Fish) (holding that "mere allegations of fraud by an out of state defendant without a showing of minimum contacts will not confer jurisdiction" (citations omitted)).  This heightened pleading requirement is particularly important in the context of specific jurisdiction, where the Court must conduct an exacting analysis of the relationship among the defendant, the forum, and the

-14-

litigation.  *See Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.,* 85 F.3d 201, 205 (5th Cir. 1996).  Indeed, absent particular allegations about the "who," "what," "where," and "when" of a defendant's allegedly fraudulent conduct, it is nearly impossible for a plaintiff to establish the necessary nexus between the cause of action and the defendant's forum contacts.  *See Burchfield*, 2002 U.S. Dist. LEXIS 3233, at *19.

Third and finally, this Court must conduct its specific jurisdiction analysis on a claim-by-claim basis.  The Fifth Circuit has held that "[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim."  *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006); *Patel*, 2009 U.S. Dist. LEXIS 44105, at *69-*70.  Courts in this District have consistently required plaintiffs to establish specific jurisdiction for each discrete allegation that underlies their causes of action.  *See Stelax Indus., Ltd. v. Alder Trading Corp.*, 3:03-CV-923, 2004 U.S. Dist. LEXIS 29026, at *18-*19 (N.D. Tex. March 25, 2004) (J. Lynn) (dismissing those aspects of plaintiff's conspiracy claim not arising out of a forum contact of the defendant).  This is because "[t]here is no such thing as supplemental specific personal jurisdiction; if separate claims are pled, specific jurisdiction must independently exist for each claim and the existence of personal jurisdiction for one claim will not provide the basis for another claim."  *Seiferth*, 472 F.3d at 275 n.6 (citation omitted).

When these pleading principles are applied to the LS Plaintiffs' Complaint, it becomes apparent that this Court lacks specific jurisdiction over each of the claims.

### (i)   The LS Plaintiffs Cannot Establish Specific Jurisdiction Over Their Misappropriation Claims

This Court lacks specific jurisdiction over the LS Plaintiffs' Misappropriation Claims for at least three reasons.  *See* (Compl. ¶ 13).  First, those claims are fatally conclusory and thus should not be considered by this Court in its specific-jurisdiction analysis.  While the Complaint lists twenty specific sums misappropriated from various Lone Star entities—*none* of which are these LS Plaintiffs—it does not provide a single detail sufficient to permit an exercise of personal jurisdiction as to those acts.  Thus, as in *Panda Brandywine*, this Court should disregard these allegations as too conclusory to consider in assessing the existence of specific jurisdiction.

And even if this Court were to consider the Misappropriation Claims, those claims do not satisfy the particularity requirements of Rule 9(b) and thus cannot provide a basis for this Court to assert specific jurisdiction over Mr. Lee.  The utter deficiency of the LS Plaintiffs' claims under Rule 9(b) is explained in detail below, in section III. C. of this motion.  At this point, however, it is sufficient to note that none of the Misappropriation Claims specifies the nature of the misrepresentations, including where or to whom the misrepresentations were made.  Without pleading this information, the LS Plaintiffs cannot establish specific jurisdiction over these claims.

Finally, regardless of these pleading deficiencies, the LS Plaintiffs have failed to make out a *prima facie* case of specific jurisdiction for these claims.  The claims in subparagraphs 13 a, 13 c-k, and 13 n-t—which all allege that Mr. Lee misappropriated funds from entities other than these LS Plaintiffs—fail to specify the location of those

-16-

entities, other than indicating that eleven of them are Korean. They also fail to indicate where the misappropriations occurred. Accordingly, as pleaded, these claims do not arise out of Mr. Lee's contacts with Texas. While the claims in subparagraphs 13 b and 13 m allege that Mr. Lee misappropriated funds from allegedly Texas-based Hudson Advisors LLC (again, *not* one of the LS Plaintiffs in this case), there is no allegation that the fraudulent aspect of these transactions occurred in Texas, or that Mr. Lee personally directed fraudulent materials to Hudson Advisors LLC in Texas. And specific jurisdiction cannot arise from the mere fact that fraudulent invoices might have ended up in Texas, absent evidence that Mr. Lee personally sent those invoices into Texas. *Patel v. Pac. Life Ins. Co.*, 3:08-CV-249, 2009 U.S. Dist. LEXIS 44105, at *80-*83 (N.D. Tex. May 22, 2009) (J. Boyle).

In *Patel*, this Court recently explained that a nonresident tortfeasor's indirect acts are insufficient to establish specific jurisdiction. The *Patel* plaintiffs alleged that specific jurisdiction existed in Texas over nonresident defendant lawyers who directed misrepresentations and omissions at Texas. *Id*. at *77. Although the lawyers did not personally send fraudulent materials into Texas, they permitted the distribution of those materials through a third-party, knowing that the materials would end up in Texas. *Id*. at *81-*82. This Court held that the lawyers' acts were insufficient to give rise to specific jurisdiction in Texas because the cause of action arose not from the direct actions of the lawyers, but rather from the actions of the third-party distributors. *Id*. at *82. This was so even though the Court credited plaintiffs' allegations that the lawyers knew and

intended for the fraudulent materials to be distributed in Texas.  *Id*. at *81-*82.  As the Court properly concluded, "it is only the defendant's contacts with the forum state that count:  purposeful availment ensures that a defendant will not be haled into a jurisdiction solely as a result of the unilateral activity of another party or third person."  *Id*. at *82-*83 (citation omitted).

Accordingly, the LS Plaintiffs cannot establish specific jurisdiction over any of their Misappropriation Claims.

### (ii)   The LS Plaintiffs Cannot Establish Specific Jurisdiction Over Their Transaction Adjustment Claims

This Court lacks specific jurisdiction over the LS Plaintiffs' Transaction Adjustment claims for many of the same reasons.  *See* (Compl. ¶ 15).  The only facts pleaded about these claims are in a five-sentence paragraph, where the LS Plaintiffs assert that Mr. Lee fraudulently adjusted the investment returns of a number of "Lone Star portfolios."  (Compl. ¶ 15.)  The LS Plaintiffs do not allege whether they, or some other Lone Star entity, owned these "Lone Star portfolios;" where the purportedly fraudulent adjustments took place or when they occurred; what statements Mr. Lee made that allegedly contained fraudulent misrepresentations or omissions, where he supposedly made them, or to whom; how the adjustments harmed these LS Plaintiffs; and, most importantly, how these adjustments arose directly from Mr. Lee's contacts with Texas.  Thus, the claims are both wholly insufficient and completely fail to satisfy Rule 9(b).  There is simply nothing in paragraph 15 that would allow this Court to conclude that the claims described therein arise from Mr. Lee's contacts with Texas.

-18-

### (iii) The LS Plaintiffs Cannot Establish Specific Jurisdiction Over Their Omission Claims

The LS Plaintiffs' Omission Claims appear predicated on Mr. Lee's failure to spontaneously disclose to the LS Plaintiffs the facts purportedly underlying the Misappropriation Claims and the Transaction Adjustment Claims.  *See* (Compl. ¶ 32). Thus, the Omission Claims are conclusory and insufficient under Rule 9(b) for the same reasons that the Misappropriation Claims and Transaction Adjustment Claims are conclusory and insufficient.  Moreover, there is no support in the law for the proposition that specific personal jurisdiction can arise from a defendant's failure to spontaneously disclose information into another forum, even if fiduciary duties are alleged to exist. Here, there is no allegation that Mr. Lee directed a communication that was fraudulent because of an omission into Texas; instead, the LS Plaintiffs have predicated their claim on Mr. Lee's failure to communicate altogether.  Thus, it cannot be said that he purposefully availed himself of the privileges of conducting activities in Texas.  *See Patel*, 2009 U.S. Dist. LEXIS 44105, at *81-*83 (finding no personal jurisdiction where third party transferred tortfeasor's fraudulent omission into the forum state despite allegation that tortfeasor knew that the omission would be distributed in that forum).

Because this Court lacks both general and specific personal jurisdiction over Mr. Lee, it should dismiss the LS Plaintiffs' Complaint.

2.      This Court's Exercise Of Personal Jurisdiction Over Mr. Lee Would
        Also Offend Traditional Notions Of Fair Play And Substantial Justice

Because Mr. Lee lacks minimum contacts with Texas, this Court need not reach the fair play and substantial-justice prong of the personal-jurisdiction analysis.  But if this Court were to do so, the LS Plaintiffs' claims should be dismissed under that prong as well: Mr. Lee's conduct is already at issue in ongoing Bermuda litigation instigated by Lone Star entities, and it would be unfair to force Mr. Lee to defend himself a second time in Texas.  This duplicative lawsuit would also waste Texas's judicial resources.

In deciding whether it is fair and reasonable to exercise jurisdiction over a nonresident defendant, a court must consider several factors:  (1) the burden on the nonresident defendant; (2) the forum state's interest in adjudicating the dispute and providing a remedy for its citizens; (3) the plaintiffs' interest in securing relief; and (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies.  *Johnston*, 523 F.3d at 615.  In this case, all four factors preponderate in favor of dismissing the claims against Mr. Lee.

First, the burden on Mr. Lee of litigating this dispute in Texas would be immense. Mr. Lee moved to Korea in 1999, now lives in New Jersey, and is already defending himself against the same or at least substantially overlapping claims in the Bermuda case. (Ex. 1 ¶ 3, App. 4; Ex. 1 ¶ 18-23, App. 6-8).  Allowing this duplicative lawsuit to proceed would require Mr. Lee to simultaneously defend himself against similar allegations, brought by related Lone Star entities, in two different forums separated by an ocean and thousands of miles.  Not content with pursuing Mr. Lee in Bermuda, and despite Mr.

-20-

Lee's restitution, the LS Plaintiffs want a second bite at the apple in Texas, where they again hope to assert wildly inflated damage claims that were not caused by Mr. Lee's conduct.  (Ex. 1 ¶ 23, App. 8; Compl. ¶ 26).

This lawsuit also contravenes Mr. Lee's choice-of-forum provision, under which Mr. Lee reasonably expected a Bermuda forum for his disputes with Lone Star.  The Lone Star partnership agreements to which Mr. Lee currently has access all designate Bermuda as the mandatory forum, and Bermuda's as the governing law.  (Ex. A § 7.07 (Lone Star Partners III, L.P. Agreement), App. 36; Ex. B § 7.07 (Lone Star Partners IV, L.P. Agreement), App. 107).  The Supreme Court has held that forum-selection clauses are "*prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."  *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 11 (1972) (citation omitted); *Ambraco Inc. v. Bossclip B V*, 570 F.3d 233, 239 (5th Cir. 2009).  And, they are powerful evidence of the parties' intent in personal jurisdiction cases.  *Cf. Am. Airlines, Inc. v. Rogerson ATS*, 952 F. Supp. 377, 381 (N.D. Tex. 1996) (J. Means) (holding that nonresident defendant's consent to a Texas forum-selection clause, standing alone, was sufficient to satisfy the traditional notions of fair play and substantial justice prong).

Second, Texas's interest in adjudicating this dispute is minimal.  Mr. Lee's allegedly tortious activities took place in Korea, (Ex. 1 ¶¶ 6-8, App. 3-4), Texas law does not govern the dispute, and a valid and enforceable choice of forum clause requires that disputes be resolved in Bermuda.  *See supra* at n.6; *see Johnston*, 523 F.3d at 617-18

(recognizing minimal interest of Texas in adjudicating dispute where, among other things, tortious acts took place in another forum and Texas law did not govern).  Further, Texas's interest in redressing the alleged harm to its citizens is highly attenuated.  Two of the LS Plaintiffs, Lone Star Fund IV (Bermuda), L.P. and LSF-KEB Holdings SCA, are foreign entities.  *See id*. (noting that the presence of a non-Texas resident plaintiff is relevant factor under the due process inquiry).  And while the third LS Plaintiff, Lone Star Fund IV (U.S.), L.P., alleges that its principal place of business is in Dallas, it is managed by a Bermuda limited partnership that is already fully engaged in the Bermuda litigation against Mr. Lee.[8]  And all these LS Plaintiffs, through limited partnerships and corporations, are ultimately controlled by John Grayken, an individual who has renounced his United States citizenship, and is now an Irish citizen.  (Ex. 2, App. 259; Ex. 3, App. 276).

Third, the LS Plaintiffs have an adequate alternative avenue of relief in Bermuda. Litigation in that jurisdiction is contractually mandated, and the Lone Star entities that control these LS Plaintiffs have already been litigating overlapping claims against Mr. Lee in Bermuda for years.  *See* (*supra* n. 6; Ex. 1. ¶¶ 18-21, App. 6-8).  Any delays in that litigation are of Lone Star's own making.  While Mr. Lee has admitted his wrongdoing and forthrightly identified relevant documents in Bermuda, Lone Star has failed to fulfill its discovery obligations in Bermuda court.  (Ex. 1 ¶ 21, App. 8).

---

[8] Lone Star's Bermuda corporate plaintiffs have sued on behalf of Bermuda limited partnerships, one of which is the Bermuda general partner that controls two of the LS Plaintiffs in this Texas suit.  (Ex. 1 ¶¶ 18-19, App. 6-7).

Moreover, Lone Star has, in essence, conceded the poverty of its claims against Mr. Lee in the Bermuda case by seeking forfeiture of Mr. Lee's limited partnership distributions while at the same time using those distributions to repay a personal debt that Mr. Lee owes Lone Star's senior partner Ellis Short, all without court authorization.  (Ex. F ¶ 11, App. 194).  Given these facts, this Court should not permit Lone Star to shift fronts and pursue relief against Mr. Lee in Texas under the guise of its "interest in securing relief." *See Dragon Capital Partners L.P. v. Merrill Lynch Capital Servs. Inc.*, 949 F. Supp. 1123, 1128 (S.D.N.Y. 1997) ("[W]hen a Plaintiff invokes the laws of a particular jurisdiction, it cannot then repudiate the courts of that jurisdiction as unable to afford justice to its claims.").[9]  In assessing these LS Plaintiffs' interest in securing relief in Texas, this Court should consider not just the duplicative nature of this lawsuit, but also the fact that Lone Star seeks far reaching damages that are in no way commensurate with the actual harm caused by Mr. Lee.  *See* (Compl. ¶ 26) (seeking to hold Mr. Lee liable for billions of dollars on the lost sale of KEB bank).

Finally, the interstate judicial system's interest in efficiently resolving controversies would be greatly aided by dismissing this lawsuit and allowing the Bermuda litigation to resolve Lone Star's dispute with Mr. Lee.  The Fifth Circuit has repeatedly recognized the interstate judicial system's interest in adjudicating all claims arising from a common nucleus of facts in a single lawsuit.  *See Johnston*, 523 F.3d at

---

[9] The Fifth Circuit has previously recognized that Bermuda law provides adequate redress for the fraud claims at issue here.  *See Kempe v. Ocean Drilling & Exploration Co.*, 876 F.2d 1138, 1145 (5th Cir. 1989), discussed *infra* at pp. 28-29.

616-17; *cf. Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 631 (5th Cir. 1999) ("[T]he judicial system's concerns for the efficient resolution of controversies preponderates in favor of a single litigation inclusive of all defendants whose allegedly intentional and tortious acts have coalesced to injure the plaintiffs."). Efficiency would also be gained since the Bermuda "courts are already familiar with the facts in this case and the suit has already proceeded sufficiently in the foreign forum." *Dragon Capital Partners*, 949 F. Supp. at 1130.

This action should be seen for what it is: an attempt by a $24 billion private-equity fund to bludgeon its former employee by forcing him to litigate the same dispute in two far flung jurisdictions. Allowing this case to proceed would require a New Jersey resident, who has not lived in Texas for over a decade, to answer in a Texas courtroom for alleged conduct that occurred in Korea and is already the subject of ongoing Bermuda litigation, even though there is no allegation that any claim arose out of any contact that Mr. Lee had with this State. This duplicative Texas lawsuit would also contravene the contractual expectation of Bermuda as a forum. And, at best, it would only serve a minimal and attenuated interest of Texas in redressing the purported harm to a partnership that, while operating within its borders, is controlled by a Bermuda entity, which in turn is ultimately controlled by a man who has renounced his United States citizenship. Accordingly, the exercise of personal jurisdiction over Mr. Lee would violate traditional notions of fair play and substantial justice.

**B.    ALTERNATIVE MOTION TO DISMISS FOR *FORUM NON CONVENIENS*, INTERNATIONAL COMITY, OR UNDER THE COURT'S INHERENT POWER TO CONTROL ITS DOCKET**

Mr. Lee moves, in the alternative, and subject to his motion to dismiss for lack of personal jurisdiction, for an order dismissing the LS Plaintiffs' claims under the law of *forum non conveniens*, principles of international comity, and this Court's inherent power to control its docket.

A court facing a motion to dismiss for *forum non conveniens* must first determine whether an alternative forum exists. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n.22 (1981). An alternative forum exists if the defendant is amenable to service of process and the alternative forum provides an adequate remedy. "A foreign forum is adequate [so long as] the parties will not be deprived of *all* remedies or treated unfairly, even though they may not enjoy the same benefits they might receive in an American court." *Camejo v. Ocean Drilling & Exploration*, 838 F.2d 1374, 1380 (5th Cir. 1988) (citations omitted) (emphasis added).

If an alternative forum exists, the Court then balances certain private and public interest factors. The relevant private interest factors include "the 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Piper Aircraft*, 454 U.S. at 241 n.6 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). The relevant public interest factors include the interest in having the trial "in a forum that is at home

with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Id.* In applying these factors, the court must bear in mind that "the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *Koster v. (Am.) Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 528 (1947).

Also applicable here is the doctrine of international comity, which "denotes the deference that courts of the United States should give to the acts of foreign governments and their courts." *Pan Eastern Exploration Co. v. Hufo Oils*, 798 F.2d 837, 839 (5th Cir. 1986). "Comity is not a binding obligation, but a discretionary decision that deference will best promote the mutual interests of the United States and the foreign sovereign." *Id.* Courts often rely on this principle to dismiss duplicative domestic litigation in favor of pending foreign proceedings. *See Anderson-Tully Lumber Co. v. Int'l Forest Prods., S.R.L.*, 306 F. App'x 858, 861 (5th Cir. 2009) (unpublished).

Likewise, district courts have "inherent power to stay or dismiss an action based on the pendency of a related proceeding in a foreign jurisdiction." *Dragon Capital Partners*, 949 F. Supp. at 1127; *MLC (Berm.) Ltd. v. Credit Suisse First Boston Corp.*, 46 F. Supp. 2d 249 (S.D.N.Y. 1999) (dismissing action brought by Bermuda partnership in New York in favor of substantially similar litigation pending in London). Courts tend to weigh a number of factors in making this determination, including "1) the similarity of the parties and issues involved, 2) the temporal sequence of filing for each action, 3)

-26-

considerations of fairness and possibility of prejudice to any of the parties, 4) the

adequacy of relief in the alternative forum, and 5) the promotion of judicial efficiency."

*Id*; *Caspian Invest., Ltd. v. Vicom Holdings, Ltd.*, 770 F. Supp. 880 (S.D.N.Y. 1991)

(dismissing duplicative claims brought in New York in favor of pending litigation in

Ireland, even though the two actions involved different defendants, and noting that

"[c]ompelling [defendants] to defend against identical claims in New York and Ireland

would be unfair to the parties as well as an unwise use of judicial resources . . . .").

The facts here present a compelling case for the application of each of these

doctrines and the factors that support them.  To determine that Bermuda is the proper

forum for Lone Star's claims, this Court need look no further than Lone Star's own

conduct.  It has twice endorsed that forum with respect to the claims in this lawsuit, first

when it agreed to Bermuda jurisdiction and Bermuda law in its partnership agreements,

and second when Lone Star entities invoked the jurisdiction of the Bermuda courts in

their initial, and still pending, lawsuit against Mr. Lee.  Indeed, the Lone Star entities that

manage and control the LS Plaintiffs have themselves already filed suit against Mr. Lee

in Bermuda, where they allege the same conduct and already seek expansive damages

that include the draconian and improper remedy of stripping Mr. Lee of entitlement to his

limited partnership share potentially worth hundreds of millions of dollars—an issue that

can only be decided in a Bermuda forum, under Bermuda law.  Lone Star handed the

Bermuda court the task of resolving this, and all related disputes, first in its partnership

agreements, and then in the Bermuda litigation that Lone Star began in 2006 and is still

pursuing.  This Court should dismiss the LS Plaintiffs Complaint in its entirety and allow the Bermuda court to complete that task.

      **1.**       **The *Forum Non Conveniens* Factors Preponderate In Favor Of Dismissal**

The doctrine of *forum non conveniens* gives a district court virtually unfettered discretion to relinquish its jurisdiction in favor of another forum, when that forum is both available and adequate, and when certain private and public interest factors preponderate in favor of litigation in that forum.  *Piper Aircraft*, 454 U.S. at 255-57.

        **(a)**      **Bermuda Is Both An Available And Adequate Alternative Forum**

The availability of Bermuda as an alternative forum is conclusively established by the fact that a similar lawsuit brought by other Lone Star entities is already pending against Mr. Lee in that forum.  *See* (Compl. ¶ 17; Ex. 1 ¶¶ 18-23, App. 6-8).

Bermuda is also an adequate forum, as the Fifth Circuit has specifically held.  In affirming a *forum non conveniens* dismissal in favor of Bermuda's jurisdiction, the Fifth Circuit recognized that "Bermuda permits litigation in its courts of [ ] fraud, negligent misrepresentation, [and] breach of fiduciary duty."  *Kempe*, 876 F.2d at 1145.  As the Fifth Circuit further explained, "Bermuda courts are totally competent to adjudge the claims that defendants falsified . . . financial statements, that the statements materially overstated  . . . financial health and concealed [the] dire financial condition, and that they failed to disclose and properly account for the true nature of the purported . . . agreements."  *Id*.

Given this precedent, this Court need not delve into the minutiae of Bermuda law to determine that Bermuda constitutes an adequate alternative forum.  As the Fifth Circuit recently recognized, "[d]istrict courts do not have to start from scratch each time they consider a forum's availability; if we have found a forum to be available in earlier cases, district courts can rely on our precedent in similar cases to hold that it is still available." *In re Ford Motor Co.*, 09-50109, 2009 U.S. App. LEXIS 19071, at *16 (5th Cir. Aug. 21, 2009).

Indeed, Bermuda is more than just an adequate and available forum for the claims of these LS Plaintiffs; it is the forum where Lone Star's similar litigation against Mr. Lee is already well underway, because Lone Star's partnership agreements with Mr. Lee specified a Bermuda forum and selected Bermuda law to govern the parties' relationship and related matters.  Those choice-of-law and forum clauses are equally applicable here. Thus, Lone Star's own conduct concedes the availability and adequacy of the Bermuda forum.  Lone Star should not now be permitted to switch courses and pursue a duplicative lawsuit against Mr. Lee in Texas.

       **(b)**     **The Private And Public Interest Factors Weigh Heavily In Favor Of Dismissal**

Because Bermuda is both an available and adequate alternative forum, dismissal of the LS Plaintiffs' Complaint is proper if the "private and public interest factors weigh in favor of dismissal."  *McLennan v. Am. Eurocopter Corp.*, 245 F.3d 403, 424 (5th Cir. 2001).

Under the private-interest prong, this lawsuit presents several practical problems that could be avoided if the Bermuda litigation were to proceed instead of this duplicative Texas suit.  First, the continuation of the Texas proceedings would force Mr. Lee to endure the hardships and costs of simultaneously defending himself in two different forums.  Those costs would include not just travel, but also the need to maintain two separate defense teams.  In contrast, in Bermuda, Mr. Lee could proceed with a single defense counsel, avoid the burdens and costs of extra travel, and also avoid unnecessary duplication of the costs of obtaining witnesses and evidence.  Allowing overlapping litigation in Texas also raises the possibility of inconsistent judgments, as well as the risk that the Bermuda and Texas courts might reach different conclusions about which Lone Star entity has standing to bring which claims, potentially allowing Lone Star an improper double recovery, and at a minimum raising troublesome issues of res judicata. These factors all suggest that Bermuda is a more appropriate forum than Texas to resolve Lone Star's dispute with Mr. Lee.  *See U.S.O. Corp. v. Mizuho Holding Co.,* 547 F.3d 749, 750 (7th Cir. 2008) (affirming dismissal of Illinois litigation in favor of pending Japanese litigation on *forum non conveniens* grounds and noting "[t]here is no reason for identical suits to be proceeding in different courts in different countries thousands of miles apart.").

The public-interest factors also favor dismissal.  Per Mr. Lee's partnership agreements with Lone Star, Bermuda law governs.  Granting this *forum non conveniens* motion would thus obviate the need for this Court to find, interpret, and apply Bermuda

law.  As the Fifth Circuit has recognized, "a foreign forum is better qualified than an American court to determine the application of foreign law."  *Gonzalez v. Naviera Neptuno A.A.*, 832 F.2d 876, 880 (5th Cir. 1987).  Indeed, "[t]here is an appropriateness . . . in having the trial of a . . . case in a forum that is at home with the . . . law that must govern the case, rather than having a court in some other forum untangle problems in conflicts of laws, and in law foreign to itself."  *Id*. at 880 n.2 (citation omitted).

Principles of international comity and this Court's inherent authority to control its docket also warrant dismissal of the LS Plaintiffs' claims.  In their Complaint, the LS Plaintiffs specifically note that Lone Star has already filed a Bermuda action against Mr. Lee based on his prior wrongful conduct.  (Compl. ¶ 17).  That lawsuit was filed more than three-and-a-half years before Lone Star decided to enlist different plaintiffs to bring the same fraud claims in Texas.  (Ex. 1 ¶ 18, App. 6-7).  Although the plaintiffs in the Bermuda action and this action differ in name, they are all Lone Star entities with Bermuda general partners ultimately controlled by a single individual, John Grayken.  (Ex. ¶ 12, App. 5).  This Court is not required to expend its judicial resources and waste its time readying this duplicative Texas suit for trial.  Nor should Mr. Lee be forced, just because Lone Star wishes to use the judicial system to beat him into submission, to simultaneously defend himself in two separate forums, thousand of miles apart, against the same allegations brought by plaintiffs that are all under the same Lone Star umbrella, and controlled by the same individual.

Finally, the choice of Bermuda forum and Bermuda law provisions in Mr. Lee's partnership agreements with Lone Star govern related disputes; relying on those agreements as a basis for their allegations, the LS Plaintiffs are necessarily bound to them. *See*, *e.g.*, *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 520 (5th Cir. 2006) (holding that plaintiff, a non-signatory to contract, was bound by contract's forum selection clause when the plaintiff's claim was based on a duty created by that contract, and noting "presumption that federal courts 'must enforce a forum selection clause in international transactions'").

Accordingly, this Court should dismiss the LS Plaintiffs' Complaint under the doctrine of *forum non conveniens*, international comity, and its inherent power to control its docket.

## C.   IN ALL EVENTS, THE LS PLAINTIFFS' COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO PLEAD FRAUD WITH PARTICULARITY

Subject to his personal jurisdiction defense, Mr. Lee also seeks dismissal under Federal Rule of Civil Procedure 9(b). That rule provides, in pertinent part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). The Rule, as construed by the Fifth Circuit, "requires specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Patel*, 2009 U.S. Dist. LEXIS 44105, at *31 (quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). "Essentially, the standard

requires the Complaint to allege answers to 'newspaper questions' ('who, what, when, where, and how') of the alleged fraud." *Id.* (quoting *Melder v. Morris,* 27 F.3d 1097, 1100 n. 5 (5th Cir. 1994)).

The LS Plaintiffs have failed to plead their fraud claims with specificity.  In support of their fraudulent misrepresentation claims, the LS Plaintiffs allege only that Mr. Lee "made numerous fraudulent misrepresentations to Plaintiffs including submissions of fraudulent invoices and misrepresentations regarding the investment returns of Lone Star portfolios."  (Compl. ¶ 30).  But such general reference to "numerous fraudulent misrepresentations" can hardly satisfy the rigorous demands of Rule 9(b).

Nor does the LS Plaintiffs' laundry list of instances of admitted misappropriations—claiming, in conclusory terms, "on or about [date], [Mr. Lee] misappropriated [amount] from [fund]" (Compl. ¶ 13)—provide the specific details of fraud that the Fifth Circuit requires.  *Patel*, 2009 U.S. Dist. LEXIS 44105, at *31 (requiring plaintiff to plead with "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." (citation omitted)).  Thus, the LS Plaintiffs have completely failed to provide Mr. Lee or this Court with the meaningful details required to support their Misappropriation Claims.  Their Complaint contains no specific allegations regarding the place where the misrepresentations were made, the method by which Mr. Lee communicated such misrepresentations (such as by phone, email, fax,

letter, or in person), the specific content of the misrepresentations, or the specific persons to whom the misrepresentations were made.

The same is true of the Transaction-Adjustment Claims.  In a five-sentence paragraph, the LS Plaintiffs assert that Mr. Lee fraudulently adjusted the investment returns of a number of "Lone Star portfolios."  (Compl. ¶ 15).  The LS Plaintiffs do not describe who owned these "Lone Star portfolios," who had a financial interest in them, what they are, where or when the purportedly fraudulent adjustments took place, how the adjustments harmed these LS Plaintiffs, or any details about alleged misrepresentations regarding these portfolios.  Such skeletal allegations do not even provide sufficient notice for the purposes of due process, let alone meet the heightened pleading standard of Rule 9(b).

The Fraudulent-Omission Claims likewise fail to satisfy the heightened pleading standard of Rule 9(b).  In support of these claims, the LS Plaintiffs allege that Mr. Lee "failed to disclose material facts to Plaintiffs that he should have disclosed."  (Compl. ¶ 32).  Not only have the LS Plaintiffs completely ignored the "who, what, when, where, and how" questions the Fifth Circuit requires them to plead, *Patel*, 2009 U.S. Dist. LEXIS 44105, at *31 (citation omitted); they have neglected to inform the Court, even in general terms, what it is that Mr. Lee allegedly failed to disclose.  For these reasons, all of the LS Plaintiffs' fraud causes of action should be dismissed.

## IV.   CONCLUSION

For the forgoing reasons, Mr. Lee respectfully requests that this Court dismiss this duplicative lawsuit for lack of personal jurisdiction, and in favor of the lawsuit that Lone Star is currently pursuing against Mr. Lee in Bermuda, the proper forum for the parties' disputes.


Date:  September 29, 2009                    Respectfully submitted,


                                             /s/ Jerome R. Doak
                                             George T. Manning
                                             Texas Bar No. 24062546
                                             gtmanning@jonesday.com
                                             Lead Attorney
                                             Jerome R. Doak
                                             Texas Bar No. 05913600
                                             jrdoak@jonesday.com
                                             JONES DAY
                                             2727 North Harwood Street
                                             Dallas, Texas  75201
                                             (214) 220-3939 (Phone)
                                             (214) 969-5100 (Fax)

                                             COUNSEL FOR DEFENDANT
                                             STEVEN H. LEE

## CERTIFICATE OF SERVICE

This is to certify that on this 29th day of September 2009, a true and correct copy of the foregoing Motion to Dismiss was served electronically via e-mail, on the following:

Karen H. Hirschman
khirschman@velaw.com
Matthew W. Moran
mmoran@velaw.com
Jane Ann R. Neiswender
jneiswender@velaw.com
VINSON & ELKINS L.L.P.
2001 Ross Avenue
Dallas, Texas 75201-2975

/s/ Jerome R. Doak

DLI-6269797v11

-36-